**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN RAQUEL BELTRÁN VÉLEZ, her husband OSVALDO PAGÁN and the CONJUGAL PARTNERSHIP formed between them. <br><br>      Plaintiffs <br><br> v. <br><br> PROFESSIONAL LAB SERVICES, C.S.P.; HOSPITAL HERMANOS MELÉNDEZ; ARÍSTIDES LEDUC SANTOS, his wife Jane Doe and the Conjugal Partnership between them; ADRIA M. GRIFFITH, John Doe and the Conjugal Partnership between them; ABC INSURANCE CO.; XYZ INSURANCE CO.; RICHARD ROE <br><br>      Defendants | CIVIL NO.: <br><br> AGE DISCRIMINATION <br><br> RETALIATION <br><br> WRONGFUL TERMINATION <br><br> PLAINTIFFS DEMAND TRIAL BY JURY |

**COMPLAINT**

TO THE HONORABLE COURT:

Come now plaintiffs, through the undersigned legal representation, and very respectfully STATE, REQUEST and PRAY as follows:

**I. NATURE OF THE ACTION**

This is an action brought by the Plaintiffs seeking compensatory relief and damages as a result of discriminatory treatment and wrongful termination by her employer, Professional Labs Services, C.S.P. (Professional Lab) and/or Hospital Hermanos Meléndez as a result of her age, and as a result of having exercised her rights guaranteed under Title VII and having opposed discrimination and retaliation. At all relevant times, Hospital Hermanos Meléndez had contracted the services of Professional Lab to perform all laboratory tests for the hospital. At all relevant times plaintiff Carmen Raquel Beltrán Vélez is a United States citizen, and an employee of Professional Labs with over 70 years of age. Defendant's actions described herein were continuous, illegal, discriminatory, without justification, unreasonable, abusive, arbitrary,

oppressive, intentional and an abuse of power by the Defendants acting under color of authority. In addition to discriminating against the Plaintiff due to her age, the Defendants had a pattern and practice of discrimination and retaliation. As a result of Defendants' actions, the Plaintiff was constructively terminated from her employment on May 16, 2015. The Defendants and its employees who acted as the Plaintiff's supervisors have intentionally discriminated and retaliated against the Plaintiff and deprived her of her employment without due process of law in violation of the Constitution and laws of the United States of America and Puerto Rico.  As a result, Defendant's illegal and intentional actions and omissions have caused Plaintiffs the damages alleged in this Complaint.

## II.  JURISDICTION AND VENUE

2.1.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, Federal Question Jurisdiction, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621-634; 5 U.S.C. §2302, and 29 C.F.R. §1614.407.  Additionally, the matter in controversy arises under an Act of Congress regulating commerce and relating to age discrimination and it exceeds the sum and value of $75,000.00.

2.2.   The Honorable Court's supplementary jurisdiction to entertain local law claims arising under the same set of operative facts is hereby invoked.  The local claims in this action are based upon: Puerto Rico Unjust Dismissal Act, Law 80 of May 30, 1976, as amended, 29 Laws of P.R. Anno. 185(e), ("Law 80"); Articles 1802 and 1803 of the Puerto Rico Civil Law, 31 L.P.R.A. §§5141, 5142.

2.3    Venue is proper within this district as the actions and transactions complained of, occurred within the Commonwealth of Puerto Rico.

2.4   Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff demands a trial by jury in the instant case.

### III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.1     The Plaintiff filed a formal complaint of age discrimination and disability with the Equal Employment Opportunity Commission (hereinafter "EEOC") on January 20, 2016.

3.2     Subsequently, on March 21, 2016, Plaintiff received her Right to Sue Letter from the EEOC. Therefore, Plaintiff has complied with all statutory prerequisites for maintaining a civil action as set forth in the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. §621-634 and in Title VII of the Civil rights Act, 42 U.S.C. §2000e et seq. and 29 C.F.R. §1614.407.

### IV.  PARTIES

4.1     Plaintiff Carmen Raquel Beltrán Vélez ("Raquel") is of legal age and a United States citizen. She is married to co-plaintiff Osvaldo Pagán.  They reside at BF-6 Amazona Sur Street, Valle Verde Development, Bayamón, Puerto Rico.

4.2     Defendant Professional Lab, at all times relevant to this Complaint, was Plaintiff Carmen Raquel's employer with its corporate headquarters at 311 Street 9, Flamingo Hills, Bayamón, Puerto Rico.  It is registered as a profit organization at the Puerto Rico State Department under number 4710.

4.3     Defendant Hospital Hermanos Meléndez, at all times relevant to this Complaint, had a contract with Professional Lab by which the latter would conduct all laboratory tests for the former.  It is registered as a profit organization at the Puerto Rico Department of State under number 2173, with its principal place of business located at State Street Road No. 2, km 11.3, Bayamón, Puerto Rico.

4.4     Defendant Arístides Leduc Santos was, at all relevant times, the President of Professional Lab, is of legal age, an American citizen and a resident of Puerto Rico. He is married to Jane Doe and together they form a Conjugal Partnership.

4.5     Defendant Adria M. Griffith was, at all relevant times, plaintiff Raquel's direct supervisor at Professional Lab. She is of legal age, an American citizen and resident of Puerto Rico. She is married to John Doe and together they form a Conjugal Partnership.

4.6     ABC Insurance Co. is an unknown insurance company which had issued and in effect an insurance policy covering the liability of Hospital Hermanos Meléndez for claims as the one alleged in this case.

4.7     XYZ Insurance Co. is an unknown insurance company which had issued and in effect an insurance policy covering the liability of Professional Lab.

4.8     Richard Roe is an unknown person, corporation, business, insurance company or legal entity which may also be responsible for the damages suffered by the plaintiff. All of these unknown defendants are, to our best knowledge and belief, citizens and residents of a State other than the Commonwealth of Puerto Rico.

**V.  FACTS**

5.1     At the time of the events, Raquel had been working for Professional Lab for more than 30 years in the capacity of Assistant Medical Technician, during which time she always received positive evaluations for her work. Plaintiff worked Monday to Friday from 6:00 pm to 11:00 pm and Saturdays, Sundays and Holidays, from 7:00 am to 3:00 pm.

5.2     Raquel was in charge of drawing blood for samples and coagulation tests; receiving all laboratory tests and samples; verifying that samples were properly taken and labels correctly placed; giving a number to each blood sample and test and distributing them accordingly;

centrifuging the samples, etc. During the weekday night shift, Raquel was the only Assistant on duty assigned to two Technicians.

5.3     The pattern of harassment against Raquel started in 2014 when co-defendant Griffith started working as the lab Supervisor during the weekends.

5.4     When defendant Griffith would come into work, after saying good morning to all of the other employees, she would intentionally ignore Raquel when passing by her work station. On every group meeting held by Griffith, Raquel, who was by far the most experienced member of the staff, was never allowed to participate and was practically ignored.

5.5     Raquel was assigned more work by Ms. Griffith than any other assistant at the Lab, being Raquel the oldest at 74.

5.6     The use of cell phones at the lab was banned, unless there was an emergency. On one occasion, Raquel received a call on her cell phone. She answered thinking there was an emergency at home. It was from her home to inform her that her 97-year-old mother had sustained a fall. Griffith saw Raquel using her cell phone and, even after learning the urgency of the call, started yelling and reprimanding Raquel in a very loud tone of voice in front of everybody in the lab. Other assistants and lab employees, younger than Raquel, used and still use their cell phones during working hours, in front of Griffith, and are not called out or reprimanded in any way.

5.7     At one time, Raquel started developing an allergy to the latex gloves she has to use at the lab, which made her nose congested and runny. Carmen Raquel asked Ms. Griffith for special gloves but her petition was denied even when it had been granted to the other younger employees.

5.8     Raquel once indicated to Griffith that she was having difficulty opening and closing the door to the centrifugal machine because she had a condition on her arm and shoulder. The

5

centrifugal machine was originally located at an accessible height, as per regulations. However, after the shelf where the machine was located collapsed, it was placed on a high stand making it difficult for 5'0" Raquel to open and close, as well as in violation of regulatory specifications. Raquel was the only one in the lab having trouble operating the machine because of limited mobility in one shoulder. She asked Griffin to relocate the machine and provided evidence of her medical condition, but her request fell on deaf ears. Professional Lab was cited at least once for this violation regarding the height of the centrifugal machine.

5.9   Griffith allowed Raquel to take only 30 minutes for lunch.  Often, Griffith would assign tasks to Raquel in such a way that Raquel was not able to take her lunch break until hours after it was due.

5.10   As part of the harassing pattern towards Raquel, she was told several times by coworkers that she should stay home and give a younger person the opportunity to profit from the higher-paying night shifts that she worked thanks to the seniority she had earned throughout decades of hard, competent work; that at her age, she should be taking care of grandchildren; that she was too slow, etc. All in front of Griffith, who failed to properly admonish the aggressors and, by doing so, tacitly consented to the harassment.

5.11   In addition, Griffith was aware that the technician in the shifts preceding Raquel's was purposely leaving her work unfinished in order to adversely affect Raquel's productivity. This, because laboratory processes work like a chain, where one step needs to be completed before the next step is taken. Griffith berated Raquel for being "slow", knowing full well that Raquel was doing the work of two people.

5.12   On more than one occasion, Raquel informed Leduc, who was Griffith's superior, of the hateful, harassing environment that Griffith imposed on her.  Leduc negligently failed to act on Raquel's complaint.

5.13    On May 16, 2015 at approximately 9:30 am, Raquel was working with two of the non-centrifugal coagulation samples from the previous shift because they were needed and its processing could not wait.  Then, suddenly, Griffith ordered Raquel (in a tone of voice that verged on shouting) to look for a patient's number from the previous shift at the sample log book, and to call the hospital to correct one label. Raquel responded that she would help her in a moment. Griffith then stood up, walked towards Raquel, and very aggressively and violently shouted right to her face and in front of everybody: "Get out, get out". Raquel felt humiliated and harassed. She quietly picked up her things and left. Shortly thereafter, Raquel returned to get a few things she had left behind in her hurry to escape the unfair and demeaning situation to which she was subjected by Griffith.  When Griffith saw her, she started to shout again at Raquel telling her this time "What are you here for? Why did you return?".

5.14    After Raquel's sudden and wrongful termination, her shifts were filled by several people, all substantially younger than Raquel. Some of those shifts have required the hiring of more than one person to do the work that Raquel did by herself.

5.15    At the present day, Raquel is 75 years old, which makes it harder for her to attract new job offers and employers. Furthermore, Raquel was terminated from her employment after 33 years of stellar, uninterrupted service.

5.16    Raquel now suffers from anxiety, depression, and insomnia, as a result of the work environment she was put through by Ms. Griffith. Her daily life was also affected because of the mistreatments suffered. Among the damages for which Raquel is entitled to the remedies provided by the law are loss of enjoyment of life, emotional distress, mental anguish, pain, suffering and inconvenience.

5.17    Raquel's husband, Osvaldo, had a first-row seat to his wife's painful, humiliating, and life-altering ordeal. He suffered with her as she returned home every day after enduring soul-crushing harassment. Among the damages for which Osvaldo is entitled to the remedies provided by the

7

law are loss of enjoyment of life, emotional distress, mental anguish, pain, suffering and inconvenience.

5.18   In conclusion, taking all of the above events collectively, one must conclude that Raquel's termination was simply and exclusively the result of age discrimination and retaliation for seeking help, albeit fruitlessly, from Leduc.

## VI.  FIRST CAUSE OF ACTION

6.1   The preceding paragraphs are reaffirmed and re-alleged herein.

6.2   The Defendants' actions and omissions have been taken under the color of authority. Such actions are illegal, unlawful, willful, intentional and constitute a violation of laws and constitution of the United States of America, including, but not limited to ADEA, 29 U.S.C. §621-634; 5 U.S.C. §2302(b)(1)(a); 29 C.F.R. part 1614.101(a). These actions and omissions were intentional and taken with complete disregard and reckless indifference to Plaintiffs rights. The actions were continuous and were part of a policy and a pattern and practice of discrimination and retaliation against a 75-year-old employee who had exercised her civil rights and had engaged in protected activity.

6.3   The Defendants' conduct complained of herein has caused and continues to cause significant emotional harm and damages entitling Plaintiffs to compensatory damages.

6.4   Due to the fact that Defendants engaged in intentional discrimination against the Plaintiff, and did so with malice or reckless indifference to her federally protected rights as an aggrieved individual, she is entitled to an award for punitive damages.

6.8   The loss of income, past, present and future is estimated at no less than $85,000.00.  At the moment of her illegal and arbitrary termination, Raquel expected to work between 3.5 to 4 more years, earning and average of $1,800.00 per month.

6.9     The compensatory and punitive damages for Raquel are estimated at no less than $1,300,000.00.

## VII.  SECOND CAUSE OF ACTION

7.1     The preceding paragraphs are reaffirmed and re-alleged herein.

7.2     The Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 et seq., prohibits employment discrimination against persons forty (40) years of age or older, including the discharge of any individual because of such individual's age. Raquel is an individual protected by the ADEA and, as such, is entitled to receive compensation for her illegal, discriminatory and unjustified discharge.

7.3     The Defendant's willful violation of the act, with reckless disregard and knowledge that this conduct was in violation of ADEA, gives rise to liquidated back pay, front pay and lost pension benefits.  The damages suffered by Plaintiff for the termination of his employment and back pay are estimated in $500,000.00.

## VIII.  THIRD CAUSE OF ACTION

(Puerto Rico Labor Law 80)

8.1     The allegations contained in all preceding paragraphs are re-alleged as if fully alleged herein.

8.2     The actions taken by Defendants are in violation of 29 L.P.R.A. sec. 185 (Law 80- Just Cause), related to wrongful termination of employment and is entitled to the compensation established therein.

## IX.   FOURTH CAUSE OF ACTION

9.1   The allegations contained in all preceding paragraphs are re-alleged as if fully alleged herein.

9.2   Defendants' conduct as alleged herein, make them liable under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§5141, 5142.  Defendants' actions and omissions were tortious and caused Plaintiff Osvaldo Pagán severe mental distress, anguish, and loss of enjoyment of life, among others.

9.3   Defendants' actions and omissions are the proximate cause of all the damages sustained by Plaintiff Osvaldo Pagán.

9.4   Plaintiff Osvaldo Pagán's damages are estimated in no less than $500,000.00.

## X.   RELIEF

WHEREFORE, the Plaintiffs respectfully requests that the Court:

(a)   Enter a Declaratory Judgment that the acts complained of herein are in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 et seq. and the Puerto Rico Labor Law 80, 29 L.P.R.A. sec. 185, for just cause.

(b)   Award Plaintiff Raquel compensatory and punitive damages caused as a result of illegal acts in an amount of no less than $1,300,000.00 for each cause of action.

(c)    Award the Plaintiffs all costs, expenses, and attorneys' fees.

(d)   Award the Plaintiffs pre-judgment and post-judgment interest.

(e)   Award Plaintiff Raquel back pay, future pay, loss of leave, overtime, medical expenses and other benefits lost in an amount of no less than $100,000.00 for each cause of action.

(f) Award Plaintiff Osvaldo Pagán damages in an amount of no less than $500,000.00.

(g) Retain jurisdiction over this action in order to assure full compliance with the decree in the event that the Court finds that the acts complained of herein were illegal and/or unconstitutional.

(h) Grant the Plaintiffs such other and further relief, as the Court may deem appropriate and proper.

WHEREFORE, it is respectfully requested from this Honorable Court to enter judgment in favor of plaintiffs and against the Defendant, granting the amounts claimed, plus costs, expenses, interests and attorneys' fees.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 20th day June, 2016.

s/Francisco Ortíz-García
**FRANCISCO ORTÍZ-GARCÍA, ESQ.**
(USDC No. 213506)
ÁLVARO R. CALDERÓN, JR. LAW OFFICES, LLP
PO BOX 192259
SAN JUAN, PR 00919-2259
PHONE (787) 753-5050  FAX  (787) 765-8028
EMAIL:  arc@microjuris.com